Perk, Judge.
The construction put upon o tracts of Asssembly has been, that when a security in appeal from the county to the circuit court, enters himself as such, lie becomes identified with the party appealing, and in the event of the appellant being cast, the security is liable to the extent of his principal. By our acts of Assembly, the appeal bond is directed to make a part of the record to lie sent up, on which, by motion, judgment is ordered to be entered against the security, and upon such judgment, so rendered, one execution issues. This is the end of the suit in the circuit court.
But it is said this may all be true, and yet when a writ of error is prayed for by the original party to the suit, and the cause taken up to the supreme court, the security is not necessarily taken along. To this I answer, that if the record does not show that the security has severed himself and will not join in the writ, the judgment being against both, will be taken up in tolo. If it is not so taken up, what is there to prevent an execution from issuing against the security pending the writ of error in the supreme court? and what is to be done if the money should be collected, and afterwards there should be «reversal of the judgment? It may be a: severed, refund the money; but who can help seeing that cost must be incurred, and often property sacrificed.
Waiving, however, arguments arising from inconvenience, what is the judgment to be rendered in the supreme court? By the act of 1809, this court is to render such judgment as the circuit court ought to, or was bound to render. The judgment, therefore, *361 the supreme court, must be as broad as the judgment in the circuit court. If then, the judgment in the circuit court should be against the principal and security, how shall we narrow the judgment in this court to the cipal only? To do so we must violate the act which is directory to us, to give such judgment as the circuit court should have passed.
We must not forget that our mode of proceeding is statutable. To comply with our statutes and render them consistent in extenso, I cannot see my way more plainly than in the track marked out heretofore. To innovate upon thé practice heretofore established, ought not to be done, unless some good might result from it. In affirming in the supreme court, and ■ thereby rendering the judgment against both, there is no increase of cost; the execution will be single; whereas, upon the plan proposed, two executions must issue, one • from the circuit court against the surely, the other against the principal from the supreme court.
■To authorize the clerk in the circuit court to act, supposing the writ of error to have operated as a supersedeas, evidence of the affirmance of the judgment in the su- ■ preme court must be sent down; often’a new suit by sci. fa. will be necessary. For myself, I am opposed to the running of more executions than one for the same demand, where it can be avoided.
But there is another view of the subject, which to my mind is a strong argument against the practice now contended for. If the judgment in' the circuit court is complete against the security, and he may at his pleasure rest there, while the principal'takes up the cause by writ of error; the security by the act of 1809, eh.— will be entitled to his judgment on motion against his principal: our practice avoids this consequence, and entitles the security to the judgment against the principal whenever he shall be finally concluded, and not before.
The argument most strongly urged against this course • is, the giving judgment against the security who is not a party to the writ.
*362 The answer to that argument, is, he is a party to the record; for the appeal bond which carries him from the county to the circuit court, will be more effectual iu taking him from the circuit to the supreme court; because the appeal bond becoming part of the record is then accompanied by a judgment against him founded on it.
The policy of the law we are not to draw in question; the rules by which the security is reached are few, they are direct; and being given by acts of Assembly cannot be departed from.
Catron, Judge.
The cause of Stump vs. Sheppard, (Cooke’s Rep. 191,) decided by the supreme court in 1812, presented the precise point litigated in this cause. It declared what the practice had been theretofore, viz: that the sccuiities did not in form join in the writ of error from the circuit court to this court. It has been followed uniformly, for almost twenty years, without inconvenience or complaint, so far as we know and believe, and i see not the least reason for changing it.
The appeal bond from the county to the circuit court, is declared part of the record, by the act of 1794, ch. 1, sec. 64, and judgment inslanter may be entered up upon the bond, if the appellant is cast. By the act of 1809, ch. 49, sec. 27, this court is bound to render such judgment as the circuit court should have rendered upon the record. Suppose Sappington upon the appeal from the county court, had reversed the judgment of that court in the circuit court, from which Whitesides had appealed to this court, and we had reversed the judgment of the circuit court, and affirmed that of the county court; would we not have proceeded to render judgment upon the appeal bond from the county to the circuit court? Certainly. It is the practice of every day; we have no other; why is it so? Because, the appeal bond is part of the record, the securities are in court, and we give judgment upon the whole record. So it is when their principle prosecutes the appeal in error. Suppose no judgment had been rendered'by the circuit court against the' securities. *363 'Ross and Hickman, but only against Sappington, who had alone prosecuted the appeal in error to this court, on affirmance here, we would have been bound by the act of 1809, to give such judgment as the circuit court ought have rendered, and judgment would have been given against the securities from the county to the circuit court, for the amount of the judgment in the circuit court. If thisjudgment be pronounced void, thousands in the various courts of the State must share the same fate,